**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| EDWARD JULIANO MULLINS,<br><br>          Plaintiff,<br><br>     vs.<br><br>R. WENCIKER, et al.,<br><br>          Defendants.<br>_____/ | CASE NO. 1:07-cv-00108-LJO-DLB (PC)<br><br>FINDINGS AND RECOMMENDATIONS RECOMMENDING DISMISSAL OF CLAIMS AGAINST DEFENDANTS CHAPMAN, CARRASCO, LILES, CAMACHO, VALENCIA, McLAUGHLIN, and RHODES<br><br>[Docs. 44, 47] |

I.  <u>Findings and Recommendations Following Screening of Complaint</u>

Plaintiff Edward Mullins ("plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. On January 19, 2007, this case was transferred from the Central District of California. Plaintiff filed an incomplete copy of his complaint originally on July 18, 2006. Plaintiff filed his complete complaint on July 24, 2006.

On April 4, 2008, the court issued an order finding that plaintiff's allegations do give rise to cognizable claims for relief under section 1983 against defendant Wenciker for unauthorized deprivation of plaintiff's personal property. (Doc. 44). However the court found that plaintiff's allegations against defendants Chapman, Carrasco, Liles, Camacho, Valencia, McLaughlin and Rhodes do not give rise to any claims for relief under section 1983. The court ordered plaintiff to either file an amended complaint or notify the court that he wishes to proceed only on his cognizable claims. On May 5, 2008, plaintiff

notified the court that he does not wish to amend and wishes to proceed only his cognizable claims. (Doc. 47). Based on plaintiff's notice, the instant Findings and Recommendations now issues.

      A.     Screening Requirement

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

"Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions," none of which applies to section 1983 actions. Swierkiewicz v. Sorema N. A., 534 U.S. 506, 512 (2002); Fed. R. Civ. Pro. 8(a). Pursuant to Rule 8(a), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. Pro. 8(a). "Such a statement must simply give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Swierkiewicz, 534 U.S. at 512. A court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. Id. at 514. "'The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test.'" Jackson v. Carey, 353 F.3d 750, 755 (9th Cir. 2003) (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)); see also Austin v. Terhune, 367 F.3d 1167, 1171 (9th Cir. 2004) ("'Pleadings need suffice only to put the opposing party on notice of the claim . . . .'" (quoting Fontana v. Haskin, 262 F.3d 871, 977 (9th Cir. 2001))). However, "the liberal pleading standard . . . applies only to a plaintiff's factual allegations." Neitze v. Williams, 490 U.S. 319, 330 n.9 (1989). "[A] liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled." Bruns v. Nat'l Credit Union Admin., 122 F.3d 1251, 1257 (9th Cir. 1997) (quoting Ivey v. Bd. of Regents, 673 F.2d 266, 268 (9th Cir. 1982)).

2

B.     Plaintiff's Claims

The events at issue in the instant action allegedly occurred at C.C.I. Tehachapi, California, where plaintiff was incarcerated at the time of the allegations in his complaint. Plaintiff names as defendants: Correctional Officer, R. Wenciker; Acting Captain, Acting Assistant Warden, and Correctional Counselor, D. Chapman; Assistant Warden, M. Carrasco; Correctional Officer and Correctional Counselor I, Liles; Correctional Counselor, Camacho; Correctional Counselor II, K. Valencia; C. & P.R. Recorder, V. McLaughlin; and Correctional Counselor I, D. Rhodes ("defendants"). Plaintiff alleges defendants engaged in retaliation against him for plaintiff's use of the grievance procedures and courts. Plaintiff claims violations of his right to due process – both as to liberty and property; to be free from cruel and unusual punishment; and that he has been denied access to the courts. Plaintiff is seeking declaratory and monetary damages.

Plaintiff's claims are not clearly set forth, rather they are mixed with legal phrases and argument. Additionally, plaintiff does not present his factual claim summary in chronological order. It is extremely difficult for the court to ascertain which facts/events were precipitating and which were subsequent. As best as the court can tell, plaintiff is alleging that:

(1) near the end of 2004, prison staff gave another prisoner (Blake) information for the sole purpose of inciting inmate Blake to solicit attempts on plaintiff's life by other inmates;

(2) in December of 2005, an RVR issued implicating plaintiff for making written threats against prison staff in retaliation for his (and his family's) litigious activities against prison staff;

(3) on April 24, 2006, plaintiff filed an appeal/grievance, although the court is unable to ascertain its basis, yet while the plaintiff's April 2006 appeal was pending, plaintiff successfully appealed the decision on the December 2005 RVR such that on May 1, 2006, it was dismissed and his property was to be returned to him as soon as feasible; and despite this dismissal, on May 5, 2006, Wenciker destroyed and/or took plaintiff's property (including photos of plaintiff's wife and twin daughters);

(4) on July 6, 2006, the UCC (made up of Liles, Camacho & Chapman – whom Rhodes

3

conspired with) placed plaintiff back on single cell status without evidence for doing so, but with the motive to adversely affect his possibility for parole;

(5) that McLaughlin falsified plaintiff's statement(s) in an appeal/grievance hearing; and

(6) on an unspecified date, under vague circumstances, Carrasco ordered him "on the spot" to pick two other prisons to be transferred to, despite knowing that plaintiff's safety would be in jeopardy at all other Level IV 180 facilities.

### C. Plaintiff's Section 1983 Claims

Based on the allegations in plaintiff's complaint, he may be able to plead some claims for relief under section 1983. However, a number of the events complained of by plaintiff, as plead, do not rise to the level of constitutional violations.

#### 1. Linkage Requirement

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. The statute plainly requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by plaintiff. See Monell v. Department of Social Services, 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976). The Ninth Circuit has held that "[a] person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978). In order to state a claim for relief under section 1983, plaintiff must link each named defendant with some affirmative act or omission that demonstrates a violation of plaintiff's federal rights. In order to proceed under section 1983 for a claim of retaliation, plaintiff must allege sufficient facts to support a claim that *each* defendant named in the complaint either acted or failed to act in a manner that was adverse to plaintiff and that the defendant did so in retaliation against plaintiff for either litigating in court or filing inmate grievances. Plaintiff is cautioned that in his amended complaint, he must clearly identify what actions or omissions led to the

4

violation of his rights and which defendants were responsible for the acts or omissions.

### 2. Retaliation

Allegations of retaliation against a prisoner's First Amendment rights to speech or to petition the government may support a section 1983 claim. Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985); see also Valandingham v. Bojorquez, 866 F.2d 1135 (9th Cir. 1989); Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005). An allegation of retaliation against a prisoner's First Amendment right to file a prison grievance is sufficient to support a claim under section 1983. Bruce v. Ylst, 351 F.3d 1283, 1288 (9th Cir. 2003). Adverse action is action that "would chill a person of ordinary firmness" from engaging in that activity. Pinard v. Clatskanie School Dist., 467 F.3d 755, 770 (9th Cir. 2006); White v. Lee, 227 F.3d 1214, 1228 (9th Cir. 2000); see also Lewis v. Jacks, 486 F.3d 1025 (8th Cir. 2007); see also Thomas v. Eby, 481 F.3d 434, 440 (6th Cir. 2007); Bennett v. Hendrix, 423 F.3d 1247, 1250-51 (11th Cir. 2005); Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 500 (4th Cir. 2005); Gill v. Pidlypchak, 389 F.3d 379, 381 (2d Cir. 2004); Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001).

Both litigation in court and filing inmate grievances are protected activities and it is impermissible for prison officials to retaliate against inmates for engaging in these activities. However, not every allegedly adverse action will be sufficient to support a claim under section 1983 for retaliation. In the prison context, cases in this Circuit addressing First Amendment retaliation claims involve situations where the action taken by the defendant was clearly adverse to the plaintiff. Rhodes, 408 F.3d at 568 (arbitrary confiscation and destruction of property, initiation of a prison transfer, and assault in retaliation for filing grievances); Austin, 367 F.3d at 1171 (retaliatory placement in administrative segregation for filing grievances); Bruce, 351 F.3d at 1288 (retaliatory validation as a gang member for filing grievances); Hines v. Gomez, 108 F.3d 265, 267 (9th Cir. 1997) (retaliatory issuance of false rules violation and subsequent finding of guilt); Pratt, 65 F.3d at 806 (retaliatory prison transfer and double-

cell status); Valandingham, 866 F.2d at 1138 (inmate labeled a snitch and approached by other inmates and threatened with harm as a result); Rizzo, 778 F.2d at 530-32 (retaliatory reassignment out of vocational class and transfer to a different prison).

Plaintiff did not make any allegations as to whether any of the acts complained of reasonably advanced a legitimate correctional goal. Plaintiff only specifically alleges that the December 2005 RVR was in retaliation for his protected activities, but he does not indicate which defendant issued that RVR. Plaintiff also does not allege whether any of the other acts he complains of were in retaliation for his protected conduct. Plaintiff must address which defendants engaged in the allegedly retaliatory acts and whether any of the retaliatory acts reasonably advanced a legitimate correctional goal.

### 3. Inmate Appeals Process & Due Process

The Due Process Clause protects prisoners from being deprived of liberty without due process of law. Wolff v. McDonnell, 418 U.S. 539, 556 (1974). In order to state a cause of action for deprivation of due process, a plaintiff must first establish the existence of a liberty interest for which the protection is sought. "States may under certain circumstances create liberty interests which are protected by the Due Process Clause." Sandin v. Conner, 515 U.S. 472, 483-84 (1995). Liberty interests created by state law are generally limited to freedom from restraint which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 484.

"[A prison] grievance procedure is a procedural right only, it does not confer any substantive right upon the inmates." Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993) (citing Azeez v. DeRobertis, 568 F. Supp. 8, 10 (N.D. Ill. 1982)); see also Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) (no liberty interest in processing of appeals because no entitlement to a specific grievance procedure); Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001) (existence of grievance procedure confers no liberty interest on prisoner); Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988). "Hence, it does not give rise to a protected liberty interest requiring the procedural protections envisioned by the Fourteenth Amendment." Azeez v. DeRobertis, 568 F. Supp. at 10; Spencer v. Moore, 638 F. Supp. 315, 316 (E.D. Mo. 1986). Actions in reviewing prisoner's administrative appeal cannot serve as the basis for liability under a § 1983 action. Buckley, 997 F.2d at 495.

As to defendant McLaughlin, plaintiff alleges that a statement McLaughlin recorded and

attributed to plaintiff in a hearing, was inaccurate. Plaintiff fails to provide any facts or allegations as to how this error in transcription might have violated his constitutional rights.

Defendants' actions in responding to plaintiff's appeal, cannot give rise to any claims for relief under section 1983 and plaintiff has not alleged any other facts that demonstrate that defendants violated his rights throughout his inmate appeals under federal law. Accordingly, plaintiff fails to state any claims upon which relief may be granted under section 1983.

### 4. Due Process – Property

Throughout the complaint, plaintiff refers to his "property" and photos of his wife and twin daughters being taken and/or destroyed.

The Due Process Clause protects prisoners from being deprived of property without due process of law, Wolff v. McDonnell, 418 U.S. 539, 556 (1974). Prisoners have a protected interest in their personal property. Hansen v. May, 502 F.2d 728, 730 (9th Cir. 1974). However, while an authorized, intentional deprivation of property is actionable under the Due Process Clause, see Hudson v. Palmer, 468 U.S. 517, 532, n.13 (1984) (citing Logan v. Zimmerman Brush Co., 455 U.S. 422 (1982)); Quick v. Jones, 754 F.2d 1521, 1524 (9th Cir. 1985), neither negligent nor unauthorized intentional deprivations of property by a state employee "constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available." Hudson v. Palmer, 468 U.S. 517, 533 (1984).

Plaintiff has stated a cognizable claim against Wenciker for unauthorized deprivation of plaintiff's personal property based on the fact that the May 1, 2006 Director's Level III decision ordered his personal property to be returned to him as soon as feasible, and yet four days after that decision, on May 5, 2006, Wenciker destroyed plaintiff's property.

### 5. Due Process – Liberty

Plaintiff appears to attempt to claim that he has been deprived of a protected liberty interest without due process of law.

The Due Process Clause protects against the deprivation of liberty without due process of law. Wolff v. McDonnell, 418 U.S. 539, 556 (1974). In order to invoke the protection of the Due Process Clause, a plaintiff must first establish the existence of a liberty interest for which the protection is

7

sought. Liberty interests may arise from the Due Process Clause itself or from state law. Wilkinson v. Austin, 125 S.Ct. 2384, 2393 (2005). The Due Process Clause itself does not confer on inmates a liberty interest in avoiding "more adverse conditions of confinement." Wilkinson, 125 S.Ct. at 2393; Hewitt v. Helms, 459 U.S. 460, 466-68 (1983).

The Supreme Court has concluded that the Due Process Clause itself does not grant prisoners a liberty interest in remaining in the general population, see Sandin v. Conner 515 U.S. 472, 485-86 (1995) and Hewit, 459 U.S. at 468 or in not losing privileges, Baxter v. Palmigiano 425 U.S. 308, 322 (1976).

However, when a prisoner is placed in administrative segregation, prison officials must, within a reasonable time after the prisoner's placement, conduct an informal, non-adversary review of the evidence justifying the decision to segregate the prisoner. See Hewitt, 459 U.S. at 473. Administrative segregation is a catch-all phrase for any for of non-punitive segregation. For example, prisoners may be segregated to protect them from other inmates, to protect other inmates from the segregated prisoner, or pending investigation of disciplinary charges, transfer, or re-classification. See Hewitt, 459 U.S. at 468.

Under state law, the existence of a liberty interest created by prison regulations is determined by focusing on the nature of the deprivation. Sandin v. Conner, 515 U.S. 472, 481-84 (1995). Such interests are limited to freedom from restraint which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. at 484.
The Due Process Clause protects prisoners from being deprived of liberty without due process of law. Wolff v. McDonnell, 418 U.S. 539, 556 (1974).

Prisoners have a protected liberty interest in being released on parole. McQuillion v. Duncan, 306 F.3d 895, 902 (9th Cir. 2002). A parole rescission determination must be "supported by 'some evidence' having 'some indicia of reliability,'" Id. (internal citations omitted), a standard which is not exacting. Caswell v. Calderon, 363 F.3d 832, 839 (9th Cir. 2004). Any challenge to the decision by the Board of Prison terms regarding plaintiff's parole violation and the time assessed for the violation is barred. When a prisoner challenges the legality or duration of his custody, or raises a constitutional challenge which could entitle him to an earlier release, his sole federal remedy is a writ of habeas corpus.

Preiser v. Rodriguez, 411 U.S. 475 (1973); Young v. Kenny, 907 F.2d 874 (9th Cir. 1990), cert. denied 11 S.Ct. 1090 (1991).

As to his confinement in segregation, plaintiff refers to his 180 day hearing(s) regarding his placement in segregation. However, plaintiff did not allege any facts to implicate that his constitutional rights were infringed upon through that hearing process.

As to the impact of the defendants' actions on plaintiff's possibility of parole, the court is unable to decipher whether plaintiff is alleging that the defendants' actions placing him on single cell status has kept plaintiff from being paroled, or if plaintiff is alleging that it might do so in the future. In any event, a 1983 proceeding is not the proper vehicle for plaintiff to raise a constitutional challenge entitling him to an earlier release.

Overall, plaintiff has failed to establish the existence of a liberty interest for which protection is sought, and has not clearly defined a protected liberty interest that he has been deprived of without due process of law.

### 8. Access to the Courts

Inmates have a fundamental constitutional right of access to the courts. Lewis v. Casey, 518 U.S. 343, 346 (1996). The right is limited to direct criminal appeals, habeas petitions,, and civil rights actions. Id. at 354. Claims for denial of, or interference with, access to the courts may arise from the frustration or hindrance of "a litigating opportunity yet to be gained" (forward-looking access claim) or from the loss of a meritorious suit that cannot now be tried (backward-looking claim). Christopher v. Harbury, 536 U.S. 403, 412-15, 122 S.Ct. 2179, 2185-87 (2002). To prevail on his claim, plaintiff must show that he suffered an actual injury by being shut out of court. Id. at 415; Lewis, 518 at 351.

Plaintiff alleges that he was denied access to the courts as he was not allowed to use the copying machine, and so had to hand copy "this petition." This is not a denial of access to the courts. Plaintiff fails to allege an actual injury (litigation opportunity yet to be gained, or loss of a meritorious suit that cannot now be tried) from any of the defendants' actions. Thus, plaintiff fails to state a cognizable claim for interference with his access to the courts.

### 9. Failure to Protect

"Prison officials have a duty to take reasonable steps to protect inmates from physical abuse."

9

Hoptowit v. Ray 682 F.2d 1237, 1250-51 (9th Cir. 1982); see also Farmer v. Brennan 511 U.S. 825, 833 (1994).

To establish a violation of this duty, the prisoner must establish that prison officials were "deliberately indifferent" to serious threats to the inmate's safety. See Farmer, 511 U.S. at 834. To demonstrate that a prison official was deliberately indifferent to a serious threat to the inmate's safety, the prisoner must show that "the official [knew] of and disregard[ed] an excessive risk to inmate ... safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [the official] must also draw the inference." Farmer, 511 U.S. at 837; Anderson v. County of Kern, 45 F.3d 1310, 1313 (9th Cir. 1995). However, to prove knowledge of the risk, the prisoner may rely on circumstantial evidence; in fact, the very obviousness of the risk may be sufficient to establish knowledge. Farmer, 511 U.S. at 842; Wallis v. Baldwin, 70 F.3d 1074, 1077 (9th Cir. 1995).

To grant injunctive relief concerning serious risks to the inmate's safety, the court must find that at the time the relief will be granted there is still a serious, present risk to the inmate and that the prison officials are still acting with deliberate indifference to that risk. Farmer, 511 U.S. at 845-47; see also Helling v. McKInney 509 U.S. 25, 35-36 (1993) (discussing injunctive relief where there is a threat of harm to inmate's health).

The Ninth Circuit has held that placing a pre-operative transsexual, who acts and dresses effeminately, in the prison's general population evidenced of deliberate indifference to an inmate's safety. Farmer, 511 U.S. at 848-49; cf. Redman v. County of San Diego, 942 F.2 1435, 1444-45 (9th Cir. 1991)(en banc)(concluding that placing a young pre-trial detainee in a cell with a known aggressive sexual offender was deliberate indifference to the detainee's safety). The Ninth Circuit has also held that allegations that prison officials called a prisoner a "snitch" in the presence of other inmates were sufficient to state a claim of deliberate indifference to an inmate's safety. See Valandingham v. Bojorquez, 866 F.2d 1135, 1139 (9th Cir. 1989). But see also Morgan v. MacDonald 41 F.3d 1291, 1293-94 (9th Cir. 1994) (rejecting Eighth Amendment claim where prisoner who had been labeled a snitch had not been retaliated against).

Plaintiff raises two possible safety claims. The first has to do with "prison staff" giving inmate

10

Blake information to incite Blake to solicit attempts on plaintiff's life.  Plaintiff fails: (1) to link these wrongful actions with any named defendants; (2) to indicate any actual injury/harm that he has sustained; and (3) to indicate whether this situation poses a continuing threat of harm, or has abated.

The second safety issue plaintiff alleges is Carrasco ordering him "on the spot" to pick two other prisons to be transferred to when Carrasco knew that plaintiff could not be transferred to any other Level IV 180 facility due to the extensive enemy history documented in plaintiff's C-file.  On this incident, plaintiff does not allege that he was actually transferred, or going to be transferred to another facility for Carrasco to have acted deliberately indifferent to plaintiff's safety. Carrasco's mere asking plaintiff to choose two other facilities to be transferred to, without more, does not rise to the level of a cognizable claim for violation of plaintiff's constitutional rights.

Therefore, plaintiff has failed to state a claim for violation his Eighth Amendment right for failure by the defendants to protect him from harm.

### 10. Conspiracy

A conspiracy claim brought under section 1983 requires proof of "'an agreement or meeting of the minds to violate constitutional rights,'" Franklin v. Fox, 312 F.3d 423, 441 (9th Cir. 2001) (quoting United Steel Workers of Am. v. Phelps Dodge Corp., 865 F.2d 1539, 1540-41 (9th Cir. 1989) (citation omitted)), and an actual deprivation of constitutional rights, Hart v. Parks, 450 F.3d 1059, 1071 (9th Cir. 2006) (quoting Woodrum v. Woodward County, Oklahoma, 866 F.2d 1121, 1126 (9th Cir. 1989)). "'To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy.'"  Franklin, 312 F.3d at 441 (quoting United Steel Workers, 865 F.2d at 1541).

The federal system is one of notice pleading, and the court may not apply a heightened pleading standard to plaintiff's allegations of conspiracy. Empress LLC v. City and County of San Francisco, 419 F.3d 1052, 1056 (9th Cir. 2005); Galbraith v. County of Santa Clara, 307 F.3d 1119, 1126 (2002). However, although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level . . . ." Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1965 (2007) (citations omitted). A plaintiff must set forth "the grounds of his entitlement to relief[,]" which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action . . . ."

Id. at 1964-65 (internal quotations and citations omitted).  As such, a bare allegation that defendants conspired to violate plaintiff's constitutional rights will not suffice to give rise to a conspiracy claim under section 1983.

Plaintiff has not alleged any facts supporting the existence of a conspiracy between Liles, Camacho, Chapman, and Rhodes.  Plaintiff merely alleges that "Rhodes conspired" with Liles, Camacho, and Chapman.  Further, plaintiff has not alleged facts demonstrating that these defendants violated any of his constitutional rights.  In order to state a cognizable claim for relief for conspiracy, plaintiff must establish that defendants conspired to violate an underlying constitutional right.

### 11. Supervisory Liability Claim

Under section 1983, liability may not be imposed on supervisory personnel for the actions of their employees under a theory of respondeat superior.  When the named defendant holds a supervisorial position, the causal link between the defendant and the claimed constitutional violation must be specifically alleged.  See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978), cert. denied, 442 U.S. 941 (1979).  To state a claim for relief under section 1983 for supervisory liability, plaintiff must allege some facts indicating that the defendant either: personally participated in the alleged deprivation of constitutional rights; knew of the violations and failed to act to prevent them; or promulgated or "implemented a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'" Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989) (internal citations omitted); Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).  Although federal pleading standards are broad, some facts must be alleged to support claims under section 1983.  See Leatherman v. Tarrant County Narcotics Unit, 507 U.S. 163, 168 (1993).

As to each defendant in a supervisory position, plaintiff must allege facts giving rise to a claim for relief under section 1983.   Plaintiff names D. Chapman and M. Carrasco as defendants in supervisory positions.  Plaintiff's allegations against both of these named defendants do not appear to rely on respondeat superior theories.  Nevertheless, as discussed herein above, plaintiff's claims against these two defendants do not present cognizable claims for violations of his constitutional rights.

///

D.  Conclusion

The court finds that plaintiff's allegations give rise to cognizable claims for relief under section 1983 against defendant Wenciker for violating plaintiff's Due Process rights. However, the court finds that plaintiff's allegations do not give rise to any claims for relief against Chapman, Carrasco, Liles, Camacho, Valencia, McLaughlin and Rhodes. The court provided plaintiff with the opportunity to file an amended complaint but plaintiff opted to proceed on the claims found to be cognizable by the court. Accordingly, it is HEREBY RECOMMENDED that:

1. This action proceeds only against defendant Wenciker on plaintiff's Due Process claim; and

2. Plaintiff's claims against defendants Chapman, Carrasco, Liles, Camacho, Valencia, McLaughlin and Rhodes be dismissed for failure to state any claims upon which relief may be granted.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within thirty (30) days after being served with these Findings and Recommendations, plaintiff may file written objections with the court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Plaintiff is advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:  May 14, 2008                    /s/ Dennis L. Beck
                                         UNITED STATES MAGISTRATE JUDGE