# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDWARD J. MULLINS, | CASE NO. 1:07-CV-00108-LJO-DLB PC |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS RECOMMENDING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT BE GRANTED |
| v. | |
| R. WENCIKER, et al., | (DOC. 170) |
| Defendants. | OBJECTIONS, IF ANY, DUE WITHIN TWENTY-ONE DAYS |

**Findings And Recommendations**

**I.    Background**

Plaintiff Edward J. Mullins ("Plaintiff") is a prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. This action is proceeding on Plaintiff's second amended complaint, filed November 13, 2008, against Defendant R. Wenciker for retaliation in violation of the First Amendment. Pending before the Court is Defendant's motion for summary judgment, filed March 28, 2011. Def.'s Mot. Summ. J., Doc. 170. On August 4, 2011, Plaintiff filed his opposition.[1]  Pl.'s Opp'n, Doc. 174. On August 11, 2011, Defendant filed his reply. Def.'s Reply, Doc. 175. The matters are submitted pursuant to Local Rule 230(l).

---

[1] Plaintiff was informed of the requirements for opposing a motion for summary judgment by a Court order on June 12, 2008. Second Informational Order, Doc. 54; *see Klingele v. Eikenberry*, 849 F.2d 409, 411 (9th Cir. 1988).

1

## II. Summary Judgment Standard

Summary judgment is appropriate when it is demonstrated that there exists no genuine dispute as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Under summary judgment practice, the moving party

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" *Id.* at 324. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Id.* at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." *Id.* at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine dispute as to any material fact actually does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Fed. R. Civ. P. 56(c); *Matsushita*, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Thrifty Oil Co. v. Bank of Am. Nat'l Trust & Sav. Ass'n*, 322 F.3d 1039, 1046 (9th Cir. 2002); *T.W. Elec.*

*Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, *Long v. County of L.A.*, 442 F.3d 1178, 1185 (9th Cir. 2006); *Wool v. Tandem Computers, Inc.*, 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv.*, 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita*, 475 U.S. at 587 (quoting former Rule 56(e) advisory committee's note on 1963 amendments).

In resolving a motion for summary judgment, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed, *Anderson*, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party, *Matsushita*, 475 U.S. at 587 (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam)). Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which an inference may be drawn. *Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244-45 (E. D. Cal. 1985), *aff'd*, 810 F.2d 898, 902 (9th Cir. 1987).

Finally, to demonstrate a genuine dispute, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . .Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 586-87 (citations omitted).

///
///
///
///

### III. Statement Of Facts[2]

At all relevant times, Defendant Wenciker was employed by CDCR as a correctional officer at CCI, as the property officer. Wenciker Decl. ¶ 1. At all relevant times, Plaintiff was an inmate in the custody of CDCR, housed at the California Correctional Institute (CCI) in Tehachapi, California. Steele Decl. ¶ 2, Ex. A, Pl.'s Dep. 24:19-25:5. Plaintiff was housed in administrative segregation in December of 2005, after having been found guilty of violating prison rules by threatening violence against staff. Pl.'s Dep. 25:12-25; Pl.'s Second Am. Compl. (SAC) 68, Administrative Segregation Unit Placement Notice, CDC 114-D.

On February 16, 2006, the Institutional Classification Committee (ICC) imposed on Plaintiff a five-month term in the Security Housing Unit (SHU). SAC 68. Before a SHU term is imposed, it must be approved by the Classification Staff Representative. Wenciker Decl. ¶ 3. On March 16, 2006, the CSR did not approve the SHU term, and referred Plaintiff back to the ICC for additional review. SAC 68; Pl.'s Dep. 27:19-23. Plaintiff was retained in administrative segregation pending review by the ICC. SAC 68; Pl.'s Dep. 27:19-23.

The fact that the CSR did not approve the SHU term did not mean that Plaintiff would not be assessed a SHU term. Wenciker Decl. ¶ 6. The ICC might have referred the matter back to the CSR with additional information that would have resulted in the CSR approving a SHU term. *Id.* In response to Plaintiff's administrative appeal, the guilty finding on his rules violation

---

[2] All facts are considered undisputed, unless otherwise noted. Pursuant to Local Rule 260(b) and Federal Rule of Civil Procedure 56(e), all disputes with the movant's statement of facts must be supported with citation to evidence. *See* L. R. 260(b) (parties opposing Statement of Undisputed Facts shall deny those that are disputed, "including with each denial a citation to the particular portions of any pleading, affidavit, deposition, interrogatory answer, admission or other document relied upon in support of that denial"). Plaintiff's opposition does not comply with Local Rule 260(b) in this regard, though Plaintiff includes exhibits and a declaration in support.

Plaintiff's verified complaint may also be treated as an opposing affidavit to the extent that it is verified and sets forth admissible facts (1) within Plaintiff's personal knowledge and not based merely on Plaintiff's belief and (2) to which Plaintiff is competent to testify. *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004); *Johnson v. Meltzer*, 134 F.3d 1393, 1399-1400 (9th Cir. 1998); *McElyea v. Babbitt*, 833 F.2d 196, 197-98 (9th Cir. 1987); *Lew v. Kona Hosp.*, 754 F.2d 1420, 1423 (9th Cir. 1985). The Court will consider only those facts and evidence that are relevant to resolving the parties' motions for summary judgment.

4

1  for threatening violence against staff was set aside on May 1, 2006.  SAC 64, CCI Second Level
2  Appeal Response.
3        On May 1, 2006, Chief Deputy Warden Gonzalez ordered that Plaintiff's property be
4  returned to him as soon as feasible. *Id.*  On April 24, 2006, Defendant Wenciker tried to issue
5  Plaintiff the personal property that Plaintiff was allowed as a SHU inmate.  SAC 65, CDC 128-B
6  Form; Pl.'s Dep. 27:24-28:7; Wenciker Decl. ¶ 4.  Defendant Wenciker was aware that Plaintiff
7  had been referred for a SHU term.  Wenciker Decl. ¶ 5.  Defendant Wenciker contends that he
8  was not aware that the CSR had not endorsed the SHU term, and the order setting aside the guilty
9  finding on the rules violation report had not yet been issued.  *Id.*; SAC 64.
10        Plaintiff refused to accept any of his property from Defendant Wenciker.  Pl.'s Dep. 45:9-
11  25; Wenciker Decl. ¶ 6.  Plaintiff contended that he was properly classified as an administrative
12  segregation inmate, not a SHU inmate, and should have been issued whatever personal property
13  administrative segregation inmates were allowed.  Pl.'s Dep. 28:3-29:16.  Plaintiff does not know
14  the difference between the property he would have been allowed as a SHU inmate and the
15  property he would have been allowed as an administrative segregation inmate. *Id.* at 44:6-45:2.
16  Plaintiff contends that he informed Defendant Wenciker of his administrative segregation status.
17  Pl.'s Opp'n, Decl. ¶ 5.
18        Plaintiff refused to tell Defendant Wenciker what Plaintiff wanted done with his property.
19  Wenciker Decl. ¶ 8.  An inmate's failure to possess all personal property registered in his name is
20  cause for disciplinary action, including confiscation of the property.  Cal. Code Regs. tit. 15, §
21  3191(b).  Personal property belonging to an inmate that is not allowed for any reason is disposed
22  of by the methods specified by statute, including shipping it to a person of the inmate's choosing
23  outside prison. *Id.* § 3191(c).  If the inmate does not make a choice of how to dispose of property
24  that is not allowed or accepted, staff determines the method of disposition, which can include
25  donation to charity or otherwise disposing of the property. *Id.*
26        On April 24, 2006, Plaintiff was aware that his property would be thrown away if he
27  refused to accept it.  Pl.'s Dep. 55:23-56:8.  Plaintiff knew he had the option of shipping his
28  property to someone outside the prison, such as his wife, but chose not to do so, because he did

1  not want his wife to discover his correspondence with other women. *Id.*

2  On May 5, 2006, Defendant Wenciker documented Plaintiff's refusal to accept his property, and designated the property for disposal. Pl.'s SAC 65; Wenciker Decl. ¶ 9. Defendant contends that at the time, the memorandum ordering the return of Plaintiff's property had not yet been placed in Plaintiff's central file, and Wenciker was not otherwise made aware of it. Wenciker Decl. ¶ 10.

Plaintiff's property was not immediately disposed of. *Id.* ¶ 11. Instead, Plaintiff's property was stored in the property room, in order to allow Plaintiff time to file an administrative appeal and exhaust his administrative remedies. *Id.* Defendant Wenciker recalls seeing the property some months after it was designated for disposal. *Id.* Defendant Wenciker did not discard Plaintiff's property, does not know if it was ever discarded, and does not know why or by whom it was discarded if it was discarded. *Id.* Defendant Wenciker merely stored Plaintiff's property in the property office, precisely because he believed, based on Plaintiff's behavior on April 24, 2006, and Defendant Wenciker's own experience, that Plaintiff might file an administrative appeal regarding his property. *Id.* ¶ 12.

Defendant Wenciker does not know when the memorandum ordering the return of Plaintiff's property was placed in his central file. *Id.* ¶ 10. Defendant Wenciker did not designate Plaintiff's property for disposal in order to retaliate against Plaintiff. *Id.* ¶ 14. Defendant Wenciker designated Plaintiff's property for disposal because Defendant Wenciker believed, in good faith and under prison regulations, that: (1) Plaintiff's designation as a SHU inmate required Defendant Wenciker to issue Plaintiff his SHU allowable property, and (2) Plaintiff's refusal to accept his property required Defendant Wenciker to designate his property for disposal. *Id.* ¶ 14.

Defendant Wenciker does not recall whether, on April 24, 2006, Plaintiff told him that he should be treated as an administrative segregation inmate, rather than a SHU inmate. *Id.* ¶ 15. Because inmates regularly lie to correctional officers in order to gain a benefit or avoid a detriment, Defendant Wenciker relies upon the central file, not the inmate, to determine the inmate's classification status. *Id.* ¶ 15. Uniform enforcement of prison regulations serves a

legitimate penological purpose. *Id.* ¶ 16. Uniform and consistent enforcement of prison regulations and rules contributes to the safety and security of the institution. *Id.*

### IV. Analysis

Allegations of retaliation against a prisoner's First Amendment rights to speech or to petition the government may support a § 1983 claim. *Rizzo v. Dawson*, 778 F.2d 527, 532 (9th Cir. 1985); *see also Valandingham v. Bojorquez*, 866 F.2d 1135 (9th Cir. 1989); *Pratt v. Rowland*, 65 F.3d 802, 807 (9th Cir. 1995). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005). At the summary judgment stage, Plaintiff is required to demonstrate that there remains a genuine dispute of material fact as to each element of the claim. *Brodheim v. Cry*, 584 F.3d 1262, 1269 n.3 (9th Cir. 2009).

Defendant contends that his actions were required by section 3191(c), Title 15 of the California Code of Regulations and reasonably advanced a legitimate correctional goal. Def.'s Mem. P. & A. 6:10-21. Defendant further contends that Plaintiff has not demonstrated causation, as Defendant Wenciker did not actually dispose of Plaintiff's property. *Id.* at 6:24-5:18. The Court will address each argument.

#### A. Disposing Of Property

The undisputed facts indicate that Defendant Wenciker did designate Plaintiff's property for disposal. Though Defendant Wenciker attests that he retained the property in anticipation of a 602 inmate grievance being filed, Defendant Wenciker is responsible for the initial deprivation. The issue is whether Defendant Wenciker's actions in the initial deprivation constitute an adverse action for purposes of retaliation.

For an action to be adverse for purposes of the First Amendment, it must be such that it would "chill or silence a person of ordinary firmness" from exercising his right. *Mendocino Envtl. Ctr. v. Mendocino County*, 192 F.2d 1283, 1300 (9th Cir. 1999). The Court finds that

designating disposal of Plaintiff's property is sufficient to demonstrate adverse action. Designating an inmate's property for disposal, if done because of an inmate's protected First Amendment conduct and not in furtherance of a legitimate penological goal, would chill an inmate's exercise of First Amendment rights. *See Rhodes*, 408 F.3d at 568 (finding confiscation and destruction of property to be adverse action for purposes of First Amendment retaliation claim). Thus, there remains a dispute as to this element of retaliation.[3]

### B.   Legitimate Penological Goals

Defendant next contends that his actions were done for the purposes of furthering a legitimate penological goal. Def.'s Mem. P. & A. 5:26-6:21. Defendant contends uniform application of the rules serves a legitimate penological interest as it produces harmony and reduces tension amongst the prisoner population. *Id.* Plaintiff does not disagree with this argument. However, Plaintiff contends that he was an administrative segregation ("ad seg") designated inmate, not a SHU designated inmate. Pl.'s Opp'n 6-7. Plaintiff contends that he should be subject to ad seg rules regarding property, including the storage of his unallowed items pending the outcome of the ad seg determination. *Id.* Plaintiff cites to section 3190(s), Title 15 of the California Code of Regulations in support. Plaintiff thus contends that Defendant Wenciker's actions were not proper because Defendant did not uniformly apply the rules to Plaintiff. Defendant contends that Plaintiff is not a qualified inmate pursuant to section 3190(s). Def.'s Reply 3:26-4:18.

Defendant as the movant must present sufficient evidence to demonstrate that there is no genuine dispute of material fact as to whether his actions furthered a legitimate penological goal. *Celotex Corp.*, 477 U.S. at 323. Institutional security is a legitimate correctional goal. *Nev. Dep't of Corr. v. Greene*, 648 F.3d 1014, 1018 (9th Cir. 2011).

---

[3] Plaintiff repeats his contention that he also states a due process claim for the deprivation of his property. Pl.'s Opp'n 4-5. The Court found, however, that Plaintiff failed to state a claim, as his allegations amounted at most to an unauthorized deprivation of property, for which California provides an adequate postdeprivation remedy. Apr. 23, 2009 Findings and Recommendations ("F&R"), Doc. 89; June 5, 2009 Order Adopting F&R, Doc. 95. The Court will not revisit Plaintiff's due process claim here.

8

The undisputed facts indicate that Defendant Wenciker did not know that Plaintiff had been designated an ad seg inmate as of April 24, 2006. Plaintiff contends that he told Defendant Wenciker he was designated for ad seg. However, Defendant Wenciker attests that he relies upon the information in an inmate's central file, not what the inmate says. Defendant Wenciker believed that Plaintiff was referred for a SHU term as of April 24, 2006. Defendant Wenciker was unaware of any change to Plaintiff's disciplinary status. Defendant Wenciker concluded that Plaintiff was qualified as a SHU designated inmate, and attempted to issue Plaintiff's allowed property as a SHU designated inmate. Plaintiff was provided the opportunity to send his unallowed property elsewhere. Plaintiff refused to accept the property allowed as a SHU inmate and to designate where he wished to send his property. Defendant then designated Plaintiff's property for disposal, in compliance with the applicable prison regulation. Thus, Defendant contends that his actions were in furtherance of a legitimate penological goal, not adverse action taken because of Plaintiff's protected First Amendment conduct. Defendant has met his initial burden of demonstrating that there is no genuine dispute of material fact, and the burden shifts to Plaintiff to demonstrate otherwise.

Plaintiff raises several arguments in opposition. Plaintiff first contends that information regarding Plaintiff's disciplinary detention is compiled in CDC Form 114-A, Detention/Segregation Record[4], in Plaintiff's central prison file pursuant to section 3332(g)(2), Title 15 of the California Code of Regulations. Pl.'s Opp'n 6-7. An ASU Placement Notice, CDC 114-D, was apparently served on April 7, 2006 to Plaintiff, and indicated that Plaintiff was retained in ASU pending additional ICC review. Pl.'s Opp'n, Ex. 476. Plaintiff contends that the CDC 114-D was placed in Plaintiff's CDC 114-A. *Id.* Such information should have been reviewed by Defendant Wenciker prior to going to Plaintiff's cell. *Id.* Plaintiff has not presented evidence which disputes Defendant's contention that he did not see in Plaintiff's central file any notice regarding Plaintiff's designation as an ad seg inmate and that Plaintiff's property should be returned accordingly. Whether a file should have been placed there and

---

[4] The CDC 114-A was not submitted.

whether it was are two different issues. Plaintiff has not presented evidence to indicate that it was in Plaintiff's central file before Defendant Wenciker attempted to return issue Plaintiff's property allowed as a SHU term inmate on April 24, 2006. Thus, Plaintiff does not dispute Defendant Wenciker's declaration that he was unaware of any memorandum that required the return of Plaintiff's property.

Plaintiff also contends that he should have been classified as an ad seg inmate pursuant to section 3190(s) based on the CDC 114-D.[5] Defendant contends that the CSR's action in not approving the SHU term did not render the initial referral for a SHU term invalid. Def.'s Reply 3:3-16. Defendant contends that Plaintiff was still properly classified as a SHU designated inmate until May 1, 2006. *Id.* Plaintiff submits the second level response from Chief Deputy Warden Gonzalez with his opposition. Pl.'s Opp'n, Ex. Second Level Response CCI 0-06-00821. On May 1, 2006, chief deputy warden Gonzalez issued a second level appeal response finding that Plaintiff's property be returned as soon as feasible, and Plaintiff be restored to Privilege Group B status. The restoration of Plaintiff's Privilege Group B status suggests that Plaintiff had Privilege Group B status at the time he was placed into ad seg on the charge of threats to prison staff. However, under the regulation, Plaintiff had received an ICC review, and had been recommended for a SHU term. Pl.'s Opp'n, Ex. 476, CDC 114-D, served April 7, 2006. CSR's actions in declining to approve the SHU term did not necessarily revoke the ICC's adjudication of guilt or assessment of a SHU term, as it remained possible that the ICC would

---

[5] Former section 3190(s) (now 3190(t)) states

> Privilege Group A or B inmates placed in administrative segregation (AD SEG) shall have their property inventoried and stored pending the outcome of Initial Classification Committee review. If the inmate is released to general population and maintains their Privilege Group A or B assignment, all allowable property shall be returned. If the inmate is retained in AD SEG, all allowable property as determined by current departmental regulations shall be reissued to the inmate. If the inmate received a SHU term, the inmate shall be required to dispose of unalowable property due to privilege group and/or security level and/or institution mission change in accordance with section 3191(c).

10

1 reassess and reimpose a SHU term after additional review. *Id.*

2 Defendant Wenciker was unaware that CSR had declined to impose the SHU term. Defendant Wenciker was only aware that Plaintiff had been designated for a SHU term pursuant to the ICC's assessment and imposition of a SHU term. Thus, pursuant to applicable prison regulations, Defendant Wenciker offered to issue Plaintiff his allowed property and afford Plaintiff the opportunity to send his unallowed property elsewhere. Plaintiff declined to accept the property, and Defendant Wenciker designated the property for disposal, pursuant to applicable regulations. Accordingly, there is no genuine dispute of material fact as to whether Defendant Wenciker's action in designating Plaintiff's property for disposal was in furtherance of a legitimate penological goal. Defendant should be entitled to summary judgment as to Plaintiff's retaliation claim as a matter of law.

### IV. Conclusion And Recommendation

Based on the foregoing, it is HEREBY RECOMMENDED that

1. Defendant's motion for summary judgment, filed March 28, 2011, should be GRANTED in full;

2. Summary judgment should be granted in favor of Defendant Wenciker and against Plaintiff; and

3. The Clerk of the Court be directed to enter judgment accordingly.

These Findings and Recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **twenty-one (21) days** after being served with these Findings and Recommendations, the parties may file written objections with the court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **October 31, 2011**              /s/ **Dennis L. Beck**
                                    UNITED STATES MAGISTRATE JUDGE